2-18-0466 Denise Mandingo, FAA, Plaintiff's Accountant v. David Stolman and his official attorney-at-law, Captain Traker and ex-officio County Collective Defendant, Appellee Arguing on behalf of the Plaintiff's Accountant, Mr. Timothy B. Wyatt Arguing on behalf of the Defendant's Appellees, David Stolman Ms. Joy C. Fitzgerald Arguing on behalf of the Defendant's Appellee, County Life Township Mr. Kurt S. Asprey And we're substituting Holly Kim for David Stolman, correct? Yes. All right. Thank you. We understand that you have also talked about dividing your time. We appreciate that in advance of the argument. And so then, Mr. Dwyer, if you're ready, you may proceed. Thank you, Your Honor. If it pleases the Court, Timothy P. Dwyer, on behalf of Denise Mandingo, at all. Please, Counsel. Your Honor, we're here on the truth in taxation, the tax objection case. And initially, I'd like to apologize to the Court.  I think there were some references earlier in your appellant, in your opening brief, too. And I kept wondering, why are we talking about PTEL? But thank you. And if I could, very quickly, Your Honor, when I first started practicing municipal law in the early 90s, the PTEL and the truth in taxation had just come out through the Edgar administration. We had many seminars. And PTEL was the main actor. And how it was portrayed was that the truth in taxation was a portion of PTEL. And that stuck with me in any event. There's no excuse for that. And I apologize to the Court. How long have you been practicing municipal law? Since 1993, Your Honor. And it's your interpretation of this statute that notice needs to be given if the 105% is not reached? Notice to whom, Your Honor? To the taxpayers. It's my position that Section 1860, and it's repeated in Section 1870, says exactly the same thing. And that is that the taxing district, all taxing districts, need to make an estimate of the monies that they are going to want via ad valorem taxes. And what if the estimate is 1%? I don't think that the number of the estimate matters, Your Honor. You don't? I don't. And you have held that position since 1990, since you started practicing municipal law? Well, I don't know that I've held that position since 1990. Is the case law contrary to your position? Not to my knowledge, Your Honor. Is the language of the actual statutory authority contrary to your position? I don't think so. Otherwise, I wouldn't be here, Your Honor. Because the language on its face requires every single taxing district to make this estimate. And my opponents have said that I'm not reading the statute in per materia or altogether. I don't think that's the case, Your Honor. I think that if you look at 1870, clearly it references the estimate to be made in 1860. It says more than a 5% increase notice in the earing required. If the estimate of the corporate authority made as provided in Section 1860 is more than 105%, there needs... What does that mean, if it's more than 105%? It means there needs to be an estimate in order to determine whether or not that barrier is met or not met. If it exceeds 105% of the previous year's levy. Right. Well, that's not what 1870 says, but that's... That's what 1856 says. That's absolutely the standard, Judge. Yeah. It's required notice in a public hearing if an estimated tax levy exceeds 105% of the previous year's levy. Right. So did you have in excess of 105% of the previous year's levy in this case, in these cases? No, Your Honor. So then why are you taking the position that you are? That I am what? That they needed to give notice and that they didn't give notice when the tax levy did not exceed 105% of the previous year's levy. Because, Your Honor, again, 1860 requires them to do something. And that something is the beginning of the truth in taxation process. They can't know if they're going to reach 105% unless they do this estimate. And if you see the time frame that's given in 1860 is 20 days prior to the adoption of the levy. And then later on in the statute, the public notice has to be given within 7 and 14 days. So in other words, there's a 21 day there and there's a 20 day thing in 1860. Now, if you don't do the estimate, you don't know if you're going to reach the 105% or not. Well, the statute clearly calls for the taxing district to make an estimate. Well, didn't Jennifer Nold of the community high school give a tentative tax levy at the board meeting which was 4.95%? She presented that at the board meeting. And so there was notice given. And you still sued them saying that they didn't give an estimate. But they gave an estimate at a public hearing. Are you referring to the township, Your Honor? The community high school, yeah. Right. Is Jennifer Nold an employee? Yes. I'm sorry. The associate superintendent. Why are you asking me who these people are? You filed a suit. This isn't the township. This is the community high school district. It's what she's asking now. Not the township. The community high school district? Yes. 177, or 117, right. Oh, I see. They gave notice. Yes, Your Honor, and that was brought to my attention and they were dismissed. But they were initially sued. But all right, let's go to the township. Pardon me? Let's go to the township, the township of the road district. At the October meeting, the township said they made an announcement. We do not believe, or we're going to do a flat tax. Actually, Your Honor, the supervisor made an announcement. All right, what's wrong with that? Well, a supervisor can't speak for the township board. When the statute requires the taxing district to make an estimate, that doesn't mean that a member of the board, a finance person, an employee of the district, or even the supervisor, can get up and say, here's what we're going to do, and that gives notice to the public. Who has to do it? Well, Your Honor, the taxing district has to do it under the statute. They have to take some form of action. Well, somebody has to speak for the taxing district. I haven't seen anybody, I haven't seen any taxing district, per se, get up and say, we're not going to do this. I mean, somebody has to speak for them. Who can speak for them? Well, Your Honor, they speak through their vote. They don't have to file a referendum. Are you saying they have to have a referendum? Is that the bottom line in your position? A referendum under no circumstances. Well, then, what's the vote? Well, they have to take some type of action on the estimate. Which means they make a public record, and they demonstrate that it's not going to exceed the 105%, and I think it was the township did so 20 days prior to the adoption of the levies, but you're saying that wasn't enough? No, Your Honor. I'm saying that a board member, an employee, a supervisor, whomever, can't get up and say, we're going to keep the levy flat in October and have that satisfy Section 1860 of the Choosing Taxation Act. Under no circumstances can one individual speak for a taxing district. That's never been the case in the state of Illinois, and it never will be. Isn't 1860 directory? 1860 is not mandatory. It's directory because it merely specifies the time for performance of the duty. And then 1865 is mandatory, and it states that taxes cannot be levied unless the notice and the requirements have been met. So I think what you're referring to is 1865, because that's mandatory. 1865 goes to the notice and publication once the estimate has been determined that it will be over 105%. If the estimate that, if the corporate authority of the taxing district makes an estimate that it's under 105%, they don't, excuse me. They don't even have to give the notice. They don't have to go to notice and hearing. Under certain circumstances. For example, if you're a municipality or a fire protection district, you have to have a public hearing for your levy. Certain taxing districts, certain taxing bodies under their enabling legislation have to have a public hearing for their levy. Now, if the statute 1865, the mandatory statute, is not complied with, is there automatic penalties? Or do you have to show prejudice? Pardon me? Or do you have to show prejudice? Your Honor, I think the case law says it does strict compliance. Oh, it does? Pardon me? I said, oh, it does. Robinson? In recollector. The third district case. I have it here if you want me to read from it. It says that, in recollector 229.3D641, we further hold that section 6 of the Taxation Act also contains specific notice requirements which must be strictly, in ITL, complied with by the taxing body. So, what's the penalty? But the question is, what's the consequences if they don't? Well, the consequence, in this particular case, Your Honor, was that the tax levy was nullified. The tax protection was abstained. In this case, Will County did, in fact, publish notice that they were going over the 105 standard. However, the court found the notice to be deficient under the terms of the statute. The statute needs to be read as a whole. I've never said otherwise. If you read the statute, then Section 1860 is the first step. Without the estimate, I think we need to ask the question as to how would the taxing body, as a corporate entity, ever know that it was going to meet the notice and publication requirements of the Truth in Taxation Act? Because they'll know if they give a notice if it's over 105, if it meets 105%. That's how they'll know. Respectfully, Your Honor, who's they? The taxpayers. The taxpayers will know if the taxing authority gives notice pursuant to the statute that it exceeded the 105%. Correct? Oh, absolutely. Do they need to know if it does not? I think, yes. Under the statute, absolutely, they need to know. Otherwise, why would the statute call for an estimate to be made in the public body to make that determination? Well, I'm just kind of stuck and maybe you can help me out here on 1856 that basically it appears to me that the legislature was clear when it set the basis or the reason for that statute was to require notice and public hearing if an estimated tax levy exceeds 105% of the previous year's levy. Right, Your Honor. And that's for all taxing districts. As I stated previously, under the enabling legislation of certain, for example, municipalities and fire protection districts, they have to have a public hearing for their levy anyway. This just makes it a requirement that, A, they make an estimate, they make a determination, and then if it goes over 105%, they have to have a public hearing. So it makes it kind of universal for all taxing districts. Really, because if you look at, and this is someplace I like to go, is to the legislative intent and the discussion on the floor. And when this statute, the truth in taxation law, was passed, this was back in 81, and Senator Don Clark Netsch says, and I quote, we have made this truth in taxation law applicable only when the tax increase of one year is effectively 5% over the tax increase of the prior year. And then another Senator, McMillan, goes on to state the public hearing if it's in excess of 5%. I mean, if you read the legislative intent which we have to follow the legislative intent, I don't know if you can shed any light on how we get around that. The legislative intent in 56 is clear, Your Honor. But if we unpack that, what's the reason for giving the public notice and the opportunity for a hearing with respect to the tax levy once it exceeds 5% of the previous year? Because that's the only time that the taxpayers need to be advised if the increase is in excess. That's what the legislature is saying. Well, Your Honor, I would respectfully disagree. With who, the legislature or my reading of what the legislature says? I would respectfully disagree with your reading. I think what the legislature is saying is that on the truth in taxation process that taxpayers should be able to get involved and know exactly what the taxing districts are doing with regards to the property taxes imposed upon them. Wouldn't that be burdensome on taxing districts to have to advise every time they decide what the taxation is going to be? And do you think the basis behind the 105% is to somewhat advise the taxpayers if it's excessive, number one, and number two, to alleviate a bit of the burden on the taxing authorities? No, I don't think it's a burden at all. They have to make a determination of what their ad valorem taxes are going to be on their constituents. They have to make the determination anyway. The statute, I think, calls for it. I think you obviously disagree. But in any event, I don't find that a burden at all. That's just the normal course of business for a taxing entity. They should know well before 20 days of their actual tax levy what they intend to take from their constituents vis-a-vis property taxes. In October of the year in question, the Antioch supervisor announced that the board would be adopting a tax levy for the district that was a flat levy or they would freeze the levy. I believe she used or he used the word freeze. That is an open meeting. That agenda which had this issue of the tax levy is published and then the minutes of that meeting are published. And this is well in excess of 20 days prior to the December 10th meeting, correct? What didn't happen? Well, again, the township supervisor can't speak for the township board. Why not? Under Ziller v. Ross 395 LF 3D 130 the second district in 2009 held that a township cannot act on its own at the behest of one individual but instead must act through its electors or duly elected officials. A municipal corporation can only act through its agents or officials. Now, Your Honor, it may very well be true The supervisor is an elected official. The board are elected officials. Well, only the board can adopt a tax levy, Your Honor. The supervisor can't. But the supervisor said the board will be adopted. And no one spoke up. No one said, no, that's not our decision. Did they? I don't know if they did or they didn't, Your Honor. What's important is how they vote on it. And they voted on it in December. They voted on the actual levy. So if I'm the taxpayer, I'm not actually going to know that that's the case unless I go to the levy hearing and then they do the levy. Now, if they do the estimate and they vote on the estimate that I know what the levy is purported to be and I can, A, I can engage in public comment, I can do something, I can take some action, that's what the Truth in Taxation law is all about.  I'm sorry, Your Honor. When the board says we're going to freeze the levy from last year, you, the taxpayer, have the right to go and get that levy from last year. Therefore, you know the amount of money that they have agreed upon. I don't know what the board's going to do based on what one individual says they're going to do. Now, Your Honor, if we take that hypothetical and we take it for the township, the road district, the road district commissioner stood up and said, I want to take the levy from $1 to $2. I have no idea what that means. I've been involved in this case for a while. I still don't know what it means. If I'm a public participant, I have no idea what that means. Now, so what does the statute require them to do in order to satisfy how you would know what they need? Your Honor, the statute clearly calls for them to make an estimate and if you look at... It calls for them to make an estimate. Does it require that that estimate be set notice out and be made public? I... I would frame it differently respectfully, Your Honor. I would say that the estimate that's required by the statute needs to be voted on by the taxing district. You know, whether that's informally through minutes, whether that's through a resolution, whatever form that takes, there has to be some notice to the taxpayer under that provision of the Truth in Taxation Act that here is the amount of money that the corporate authorities for the taxing district intend to impose upon its constituents. I think if we get lost in the 105%, which brings us to publication and hearing, then we've rendered 1860 meaningless. What does the estimate mean? Can anyone do the estimate? That's not what the statute says. The statute says that each taxing district has to do an estimate. I submit that those words are there for a reason and that's what's at issue today. Thank you. You'll have an opportunity to respond after counsel present their argument. Thank you, Your Honor. And who's going first? I will. Thank you. Thank you. Good morning, counsel. Good morning, Mr. Ashcroft. The trial court properly granted summary judgment for the defendant-treasurer where there are no disputed facts about what Lake County did in 2015 to determine its levy for 2016. Those undisputed facts reveal that Lake County did not propose a levy that would raise revenue by more than 5% over the revenue the prior year generated. How did that happen? Because they followed 1810. County levies says what a county should do when it is to and these are the words of the statute determine the amount of county taxes to be levied for all purposes. Determine the amount of taxes to be levied during a period greater or less than a year. If you follow counsel's argument, what he is essentially saying is there is an extra legislative process here of a quote-unquote determination that he wants to see in writing but it can't be the proposed budget. What's important to note here is that the uncontroverted facts which he agrees with and he admits and that is at the record at 716-718 he admits the existence of in his receipt of the county's 300-plus page budget its board meeting minutes and its agenda beginning in the middle of the summer leading up to its September meeting which was adjourned each month September and October with the levy being adopted in November. That is the county's determination period. There is not an extra judicial or extra legislative requirement that the document itself has to be called a determination. That is the upshot of what counsel suggests. He's entirely incorrect, entirely misreading truth in taxation. We adopt the court's questioning truth in taxation only applies when a taxing district contemplates or actually proposes levying at 105% of the prior year's levy. Who makes that determination Ms. Fitzgerald or who makes that pronouncement as Mr. Dwyer proposes? That it needs to be the board or it needs to be some elected official? Who is a proper person and how is that taxation conveyed? Well, the county's finance director works in conjunction with the county's administrator to evaluate the needs of the county, their budgetary needs and then they present that budget to the members. It goes through a committee process, through F&A, through law and judicial and then it is ultimately presented to the board itself who then is legally responsible for adopting that budget. And in point of fact, no one disagrees here that in 2015 leading up to the fiscal year 2016 that that's exactly what happened. Mr. Dwyer told you this morning, he says in his pleadings that he agrees that there was no 105% levy contemplated much less adopted. So that is put to rest with respect to what the actual facts are. And where the facts aren't disputed, then the question comes, does truth in taxation even apply? The answer is clearly, obviously and without question, no. It does not. It only applies. Except for the 20 days. Or the prior time or the time prior to the actual adoption. There has to be some indication. That is if the act applies. We say it doesn't apply. If you read 56, the legislature very kindly in this one particular act made it simple for the reader. They tell you the legislative purpose. The purpose of this law, referring to truth in taxation, is to require taxing districts to disclose by publication and to hold a public hearing on their intention to, which is not present here, adopt an aggregate levy in the amounts more than 105% of the amount of property taxes, etc., upon the final aggregate levy of the preceding year. Not present here. I read that to say and I believe any responsible attorney reading this act would read it to say, are our facts present here that would indicate this should apply? Are we above 105% or not? If we're not, don't worry about it. Does it matter? It's irrelevant. But somebody, I think it was Jennifer Nold, didn't back do a memo or create a document saying that it was 3.49 even though it wasn't over 105%. Yes. The fact that she did that, does that require the other taxing agencies or the other agencies to do the same? No, it does not. And the reason it doesn't is because county levies at 1810, which governs what this county does, it says they are to determine the amount of county taxes to be levied for all purposes. That's the budget. They are determining the amount of money necessary to operate the government. There's no dispute here that these documents were all publicly available at every single stage. Every meeting, there was notice given about when the meeting would happen, what was on the agenda, what was to be discussed. That was published in advance. The committee meetings and the board meetings. There was notice throughout. So we have to dispute that the complaint alleges a problem with the process because we're being directed to a process that's totally inapplicable to us. Council doesn't even recognize 1810, doesn't even talk about it. Notwithstanding the fact that we are a county and we are operating under 1810. He's making a jump in an assumption that truth in taxation applies without first understanding what the facts are. You can't make that jump. That's not allowed. You have to first know your facts. He does. He agrees. Because this court has said under 35 ILCS 200 21198 which is an act that says no error or informality of levying a tax not affecting the substantial justice of it will serve to vitiate it. That is People X Roe Martin v. Commonwealth which is a second district case. Taxes are presumptively legal. It is the burden of the petitioner, the appellant in this case, to show that they weren't. He couldn't. He agreed with our facts. He agreed that the process was what it was. He's asking you to do something extra legislatively which is say there needs to be a piece of paper or something that he can point to other than a budget that is called a determination that is nowhere within any act. It is not within county's code. It is not within truth in taxation. So to accept the plaintiff's claim, you have to say that 1810 doesn't govern this question. And you have to we tell you that there's no we suggest to you there's no lawyerly logic to this argument. The second claim is the county didn't give notice of its action to determine the levy as required by Ketel. First of all, counsel, as it's said here today Ketel is totally applicable. We agree. I think that was a typo is his point. Yes. Well, even if we're looking at 18 even if we're looking at truth in taxation we assume that that's what he meant. We have to ignore 1856 which we shouldn't and we can't because we have to read the statute as a whole. Counsel is not reading the statute as a whole. He's parsing it. He's saying to you ignore 1856 go right to 1860 apply it to all taxing districts under all circumstances and by the way while you're there read in a requirement that doesn't exist. Read in a requirement that says a determination has to be something I say it is. Has to take into some form that I say it should. I did not have an opportunity at this point to go through my sanctions argument but we adopted it. We asked the court to render sanctions in this case and I will leave that if counsel has time to argue we have the same arguments. One question on You ask for attorney's fees also? We do at the county rate of attorney's fees. There is a governmental rate the court could adopt if it saw fit to do so. I would direct the court based on your question to the WKS case of which the court is previously aware the rules of statutory construction are relevant here. They're lawyerly. We have to behave as lawyers and view the court by adding requirements to them or suggesting they apply when they don't. This conduct is similar to what this court previously observed in that case at paragraph 22 of the WKS case. Thank you. Thank you. Mr. Estworth? Good morning Justice. It's Kurt Estworth on behalf of Antioch Township and the Antioch Township Borough District. Could you move that microphone just up a bit to catch you? There you go. I'll try not to belabor Ms. Fitzgerald's arguments that we have several of the same ones. Yours is an estimate. What's an estimate? I think what the township did is they estimated what their levy would be. The township supervisor said we think we're going to have a flat levy. There was no final action needed. They didn't have to go through the notice process. The board was free to vote how they would like in the December meeting on that actual levy. That's the final action there. The Borough District, which is actually a separate unit of government, and the Borough District is the only the Borough District Commissioner is the only elected official. He has the authority to decide basically every aspect of how he operates. He made the same estimate. He said it was going to be $1 to $2 more. We believe that meant $1 to $2 more per each household. These levies are based upon their budget. Yes. If you look at their budget from last year, look at their budget from this year, are you going to need more than 5% of 100% of last year's budget, basically? Yes. They have some alternative revenue streams that they have to account for in their budgets, but ultimately they do look to their budget. They have to look to their budget when they're deciding how much they need to levy. How else would you know what to levy if you're not looking at your budget? Yes, you're correct. The minutes of the meeting are open to the public, correct? Yes, sir. The actual agenda for the meeting is published in anticipation of the meeting. It has to be, yes. This is an open meeting where there is a forum that people can address. Public comment is required at every open meeting, yes. Last but not least, was there any objection, not by the Township Road District, because that's just one person, but by anyone on the Board when this was announced by the Supervisor that we are freezing the levy? No, there was not, and ultimately the levy that was passed was a flat levy and it was adopted by the Board. Did they levy an extra dollar or something? I think the Road District's levy increased a small percentage, but the actual Township's levy was flat. When the minutes or rather the agenda is published, sometimes there are documents that are attached that might be required to be attached. Is the last year's budget attached or last year's levy attached, or was it in this case? No, Your Honor, but those are public records that can easily be obtained from the Township. You can file a FOIA request or you can just simply ask the Township and they have those files on record and they have to produce them to you. If I may address a few of the arguments about counsel raised about the applicability of 1860, counsel claims that 1860 under our reading would become meaningless if it doesn't apply when a levy is considered that's not over 105%, or that it's meaningless even where a levy is considered over 105%. That's not true, actually. When a levy is considered that's going to exceed 105%, the reason for the estimate is that that estimate has to be included in the Black Box Notice under Section 1880. That's why the estimate is in there, so that you can tell the public that we are going to go over 105% and this is the amount. That's why the estimate is there. If you're not going to go over 105%, there's really, again, the Truth in Taxation Act doesn't apply. That's the reason that the estimate is required under the Act in those circumstances. I think I'd also just like to note that the Act itself actually contemplates 1860 through 1885 not being applicable in every instance. Section 1890 requires there's a limitation on a county clerk when they extend a levy and says that they cannot extend a levy unless the chief officer of the body has certified that they've complied with Sections 1860 through 1885 or that they were inapplicable. So counsel's claim that 1860 applies in every instance to every levy is rebutted by the plain language of the Truth in Taxation Act. The Act clearly contemplates that there's going to be an instance where 1860 through 1885 are not going to apply, that being the time when you're not considering a levy. Is that somewhat self-serving? In other words, I decide it doesn't apply to me? Your Honor, actually if you decide that it, I'm sorry, the county clerk, in other words, sitting in the seat saying, oh, that doesn't apply to me, I make the decision. It's actually the chief officer of the body that has to certify this. So in this case, it would be the township supervisor of the Township Road District certifying to the county clerk that either I complied with 1860 through 1885 or it wasn't applicable because it was not over 105%. And is that a rather standard certification? I mean, it's not a standard form that you can go to Office Depot for, but it is generally a standard. Yes, it's generally attached to every single levy ordinance and it's, again, something that is required by the county. And I'd also just like to note that there's actually even a remedy under the Act. If you don't make an estimate or you do make an estimate that it's going to be less than 105% and you actually do adopt a levy over 105%, Section 1885 allows you to cure that deficiency through publishing an additional notice. So to say that you can fail to comply with the notice provisions even when you're going over 105% through a subsequent notice, but when you aren't even going to reach that 105% and your levy's invalid altogether and there's no way to cure that, that does not seem to comply with the legislative intent of the Truth in Taxation Act. Talk to us about sanctions. Your Honor, I think there really is no reasonable grounds here for plaintiff's appeal. The Truth in Taxation Act is clear. The legislative intent is there. There was no need to try and determine this. We did not have to debate what the legislative intent of the Act was. There was really no way to interpret the Truth in Taxation Act otherwise to determine that 1860 would somehow invalidate a levy if an estimate was not made. Even so, it's clear that both the Township and the Road District even if 1860 does apply, they complied with this. They each made an estimate. So for counsel to say that A, 1860 requires a levy estimate at every instance, even when you're less than 105%, and then B, to say that you did not comply with that by making these estimates, we don't think there's any reasonable grounds to make those arguments. But he said it didn't apply because you didn't give her a notice. I think that the way that you read 1860, there's no way to read 1860 to say that 1860 requires any type of notice. There's no language in 1860 that requires a document to be created. It does not require that it be even made at a public meeting. However, that's exactly what the Township did, and there's minutes showing that these estimates were made. Do you think that a Township could issue a press release saying that this is our estimate and it's flat? It's a flat levy? We're freezing? I don't think there would be anything prohibiting that. Again, I think 1860 doesn't require how to form with that estimate case. It doesn't require that it be a resolution. It doesn't require it be an ordinance. Again, it doesn't even require that that estimate is made at a public meeting. So I think that's certainly something they could do. There are some entities that do adopt a resolution for the estimate of their levy. It's just not required by Section 1860. There's really no language in there that can be interpreted to require additional notice or documentation burdens on a public body for that levy estimate. Has the whole concept of best practices entered the municipal government practice yet? I think it has in a lot of our, at least in my experience with our clients, they adopt flat levies almost routinely. There's never even a consideration of an increase in the levy. Truth in taxation has never been something that they've even had to deal with. Thank you, Counselor. Thank you, Your Honor. With respect to the county, real quick, the first thing the county said is we made it to termination. The first thing the county said is we made it to termination. We made it to termination pursuant to the budget process. Section 1870 of the Truth in Taxation Act specifically precludes any budget process hearing to comport with the law. It's just apples and oranges. Budgets and tax levies are two entirely separate things with two entirely separate processes. Right, but don't they base the tax levy, isn't the tax levy based on the budget? Your Honor, in a macro sense it is. In a micro sense, it's not. For example, Lake County, their tax levy is, I think, $161 million. Their budget is several hundreds of millions. They get monies from various permit fees. They get money from the state government. They have to make a determination in their budget as to how much they can spend. That's the authority for how much they can spend. With the tax levy, the estimate to call for the Truth in Taxation Act is the amount of money that they need to tax their residents from. The whole idea is to get... In order to meet their budget. Partially, yes. Their budget changes from year to year. Therefore, so too does the tax levy sometimes. What you get from your levy is only a portion of what you spend under your budget. To say that the two are directly related, I think, is not accurate, although they certainly are related in some sense. Why are you not considering Section 1810 in your argument, which talks about what the county shall do? It's not that I don't consider it at all, Your Honor. It's just that 1860 usurps 1810. It's far more specific, and as the Cultsburg Court noted, this particular statute is geared solely towards the levy. For example, the county cites Section, I think it's 21-195 to talk about their levy being substantially just. If you look at that statute, that goes to everything, including assessments. The real provision that they should be citing is 2340, 35 ILCS 200-2340, which includes a saying, a substantially just language, they shall not initiate any tax. That's in our initial brief, and we go through all the cases. But 1810 says county levies. That's what it says. It talks about not an estimate, but a determination, determine the amount of county taxes to be levied. Why can't I accept that as the responsibility of the county and end our conversation? Because Section 1870 of the Truth in Taxation Act goes through the process in the last sentence, and that is the hearing shall not coincide with the hearing on the proposed budget of the taxing district. They've bifurcated the budget and the tax levy process in the statute. And what the county is saying, that doesn't matter. This language is irrelevant. We did our budget under 1810, and therefore it doesn't matter. But don't you read them all as a whole? Oh, absolutely, Your Honor. And if you read them all as a whole and you say, well, here, you have to make this determination, and then the later statute is far more specific and says that your budget hearing doesn't have any effect upon this section because the tax levy and the budget process is different than if you read it as a whole, this is more specific and specific controls over the general. I don't think that that's, by any means, bad faith. You know, the county gave us their budget documents like Mrs. Sherrill said well in advance. And I said, respectfully, we're talking about apples and oranges here. And they're up here making the argument that A, I'm here in bad faith, and then they come to the court and say, the first thing they say is we made a determination, okay, so we complied with the law. The second thing they say is the law is not applicable to us. If you read 1856, it doesn't apply. And the third thing they say is that, you know what, if it does apply, it doesn't matter because it's substantially just. Now, respectfully, Your Honor, those are conflicting arguments, and they can't be reconciled with each other. The only thing that we're saying is that the specific language in 1860, the requirement that a taxing district make an estimate and disseminate to the public in any form is not a stretch. Well, I would say the taxing district would be Antioch, not county. County has its own specific guideline under 1810. Your Honor, are you saying that the county is not a taxing district? It is, but it has again, I'm taking your argument. If we go with the general or the specific, the specific is 1810. It is not 1860. The specific applies to counties. 1860 applies to taxing districts, but not the county. I see. Because that's why we're looking at the whole statutory authority. Yeah. 1870 says you can't make an estimate in your budget process under the Truth in Taxation Law. If the court says otherwise, then it does. Thank you, counsel, and thank you all for arguing here this morning. We will take the matter under advisement. A decision will be made in due course. Right now, we stand in recess to prepare for our next hearing.